FILED & JUDGMENT ENTERED
Steven T. Salata

May 12 2014

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

Laura T. Beyer
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| **JAMES L. NELSON, JR.** ) | Chapter 13 |
| **CYNTHIA MULLIS NELSON,** ) | Case No. 13-32469 |
| ) | |
| Debtors. ) | |
| ) | |

### ORDER OVERRULING CHAPTER 7 TRUSTEE'S
### OBJECTION TO CONVERSION AND DENYING MOTION TO RECONVERT

This matter came before the court upon the Chapter 7 Trustee's Objection to Conversion and Motion to Reconvert and the Debtors' response thereto. The court conducted a hearing on this matter on March 17, 2014. Richard M. Mitchell, Chapter 7 Trustee and attorney for the Chapter 7 Trustee (the "Trustee"); Jeffrey G. Dalrymple, counsel for the Debtors; and the Chapter 13 Trustee, Warren Tadlock, were present at the hearing. For the reasons stated below, the Trustee's Objection is **OVERRULED** and Trustee's Motion to Reconvert is **DENIED.**

**PROCEDURAL HISTORY AND FINDINGS OF FACT**

1. The Debtors filed a voluntary Chapter 7 bankruptcy petition on November 21, 2013.

2. On their Schedule A, the Debtors listed a jointly-owned, unencumbered parcel of land (the "Lot") at 8101 Arlington Church Road, Charlotte, NC 28227. The Debtors described the parcel as a "1 acre Lot" and listed its value as $10,000.

3. The Trustee conducted the section 341 Meeting of Creditors on December 23, 2013. The Debtors were sworn and testified at the 341 meeting. When the Trustee questioned the Debtors regarding their valuation of the Lot on Schedule A, the male Debtor testified that a real estate broker in the area in which they live provided him with that estimate.

4. Following the 341 meeting, the Trustee sought his own opinion as to the value of the Lot, and he retained a real estate agent, Teresa Wilson, who listed the Lot for $44,900.

5. Also subsequent to the 341 meeting, while searching the Mecklenburg County Public Registry, the Trustee discovered the conveyance of two parcels of real estate in 2001 that were transferred into a trust (the "Trust") for which the female Debtor was listed as the trustee.

6. The Trustee emailed counsel for the Debtors after this discovery and requested additional information regarding the

Trust. Specifically, the Trustee sought to determine whether the female Debtor had an ownership interest in the Trust. Debtors' counsel advised the Trustee that he would obtain a copy of the Trust documents, provide them to the Trustee, and amend the Debtors' schedules if appropriate.

7. Upon his review of the Trust documents, Debtors' counsel determined that the female Debtor owned a 50% beneficiary interest in a springing trust set up under her late father's will. On January 20, 2014, Debtors' counsel emailed the Trustee and informed him about the female Debtor's beneficial interest in the Trust; asserted that the Debtors' failure to list this asset was inadvertent; and indicated that the Debtors would amend Schedule B to reflect this asset. In addition, Debtors' counsel notified the Trustee that the Debtors would likely convert to Chapter 13 as the male Debtor had become re-employed and the Debtors wanted to preserve the female Debtor's beneficial interest in the Trust. On January 21, 2014, the Debtors filed an amended Schedule B to list a "Beneficary Interest in Springing Trust" with a value of $100,000.

8. Debtors' counsel subsequently emailed the Trustee to inform him that the Debtors had in fact instructed him to convert their case to Chapter 13 and that the conversion would be forthcoming. In response, the Trustee notified Debtors' counsel

3

that he planned to object to the conversion on the basis of bad faith.

9. On February 5, 2014, the Trustee filed a Complaint objecting to the Debtors' Chapter 7 Discharge. Later that same day, the Debtors filed their Notice of Conversion to Chapter 13. The Trustee then filed the Objection to Conversion and Motion to Reconvert the case on the basis of bad faith, and the Debtors filed a Response to Objection to Conversion and Motion to Reconvert asserting that the conversion was made in good faith.

10. At the hearing on this matter, the Trustee's realtor, Teresa Wilson, testified that the Lot was listed for sale at $44,900. Two offers had been received for $36,000 and $30,000, but the Trustee rejected those offers.

11. As to the value of the Lot, the male Debtor testified that he had asked Fran Harris, a well-known realtor in the area who was familiar with the parcel, for her opinion of its value. Ms. Harris told the male Debtor that raw land was selling for between $5,000 and $8,000 an acre in the township of Mint Hill. Based on that information, the male Debtor indicated that he used the $5,000 low-end value for 2 acres to come up with the $10,000 total value that the Debtors listed on Schedule A.

12. The male Debtor then testified that he did not know why the Lot was described as being only 1 acre on Schedule A. He

explained that he has always known the parcel is 1.92 acres, he never told his attorney that the Lot was 1 acre, and he even recalled describing it to his attorney as being almost 2 acres. He concluded that the description of the Lot as being 1 acre must have been a typographical error. In fact, in the Debtors' response to the Trustee's motion, counsel for the Debtors acknowledged that "having listed the lot as 1 acre rather than 1.92 acres was an inadvertent mistake by undersigned counsel."

13. In addition to the testimony of the male Debtor regarding the Lot, the female Debtor testified about her failure to list her beneficial ownership interest in the Trust as an asset. She explained that in 2001, she took her father, who was terminally ill with bladder cancer, to his lawyer's office the day before he was to be admitted to the hospital for treatment so he could sign some papers. She indicated that she did not know what he was signing but understood she "was going to be a trust for her mother's will." Neither her father, his attorney, or anyone else fully explained what that meant, but she generally understood that she was to take care of her mother, who was an alcoholic, pay her mother's bills, and make sure that her mother did not remarry and lose her inheritance. The female Debtor further testified that she did what her father told her to do with respect to taking care of her mother because she wanted him

5

to be at peace before he went into the hospital. She indicated that she never realized that the trust documents gave her an ownership interest in anything.

14. In addition, the female Debtor explained that she did not understand she had an ownership interest in the Trust at the time she filed the bankruptcy petition. Moreover, the Debtors' bankruptcy attorney did not question her regarding her beneficial ownership interest in a trust before preparing and filing the Debtors' petition. In fact, in the Debtors' response to the Trustee's motion, counsel for the Debtors acknowledged that he failed to inquire with the Debtors about such an ownership interest because in over 20 years of bankruptcy practice, he had never come across such a beneficial ownership interest in a trust. Finally, the female Debtor reiterated several times that even after everything had been explained to her, she still does not understand how she has an ownership interest in the Trust. Rather, she believes that upon her mother's death, anything she stands to inherit would come through her mother's will rather than by virtue of the Trust.

**CONCLUSIONS OF LAW**

15. The Debtors converted their Chapter 7 case to a case under Chapter 13 pursuant to 11 U.S.C. § 706(a). Section 706(a) provides that "[t]he debtor may convert a case under this chapter

to a case under Chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable."

16. Although "the statutory language 'at any time' appears to confer an absolute right to convert so long as the case was not previously converted," In re Goines, 397 B.R. 26, 30 (Bankr. M.D.N.C. 2007), the Supreme Court held in Marrama v. Citizens Bank of Massachusetts that a Chapter 7 debtor forfeited his right to convert by engaging in pre-petition bad faith conduct, 549 U.S. 365, 371 (2007). In Marrama, the debtor misrepresented the value of a house in his schedules and failed to disclose the transfer of the house into a trust. Id. at 368. The bad faith conduct by the debtor established "cause" pursuant to 11 U.S.C. § 1307(c) that would have allowed dismissal or reconversion of the Chapter 13 case, which the Supreme Court concluded was "tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13." Id. at 373-74. "In other words, a Chapter 7 debtor loses the absolute right to convert to a Chapter 13 if he or she engages in pre-petition bad faith conduct," In re Jennings, No. 12-32615, 2013 WL 1137052, at *4 (Bankr. W.D.N.C. Mar. 19, 2013), because "[t]hat individual is not a member of the class of 'honest but unfortunate debtor[s]' the bankruptcy laws

7

were enacted to protect," Marrama, 549 U.S. at 374.

17. While Marrama does not define bad faith conduct, the Court emphasizes that the conduct of the debtor must be "atypical" and limits denial of conversion to "extraordinary cases." Id. at 375, n.11. Marrama, consistent with the general policy of 11 U.S.C. § 706(a) to give debtors an opportunity to repay their debts, limits its remedy to debtors who engage in fraudulent conduct. Id. at 375.

18. The term "bad faith" is defined as "dishonesty of belief or purpose." BLACK'S LAW DICTIONARY 159 (9th ed. 2009). "Therefore a debtor who is dishonest in belief or purpose loses her absolute right to convert from a Chapter 7 case to a Chapter 13 case." Goines, 397 B.R. at 31. Furthermore, courts have concluded that the party objecting to conversion has the burden of proving a debtor's bad faith by a preponderance of the evidence. See, e.g., Jennings, 2013 WL 1137052, at *4; Goines 397 B.R. at 32–33.

19. The Chapter 7 Trustee argues that this is a "catch me if you can" case where the Debtors acted in bad faith by (1) intentionally failing to list the female Debtor's beneficial ownership interest in the Trust and (2) intentionally misrepresenting the size and value of the Lot in the hopes that their misrepresentations would not be discovered.

8

20. The Debtors assert that they had a valid good faith basis for their valuation of the Lot; that the incorrect listing of the size of the Lot was the result of a typographical error; and that they simply did not know the female Debtor's beneficial interest in the Trust was an immediately recognizable property ownership interest that needed to be scheduled as an asset. Finally, the Debtors argue that they are in the class of "honest but unfortunate debtors" the bankruptcy laws were enacted to protect.

21. The court recognizes the seriousness of the omissions made by the Debtors in this case and affirms that debtors who make such omissions should suffer consequences if the omissions are made with dishonesty of belief or purpose. However, based on the evidence presented in this case the court concludes that the Trustee has not met his burden of proving that the Debtors acted with dishonesty of belief or purpose. Rather, the Debtors had legitimate explanations for the errors in their schedules, the most compelling of which was the female Debtor's testimony regarding her remainder interest in the Trust. After listening to the female Debtor's testimony, it became abundantly clear that the Debtors did not understand that the female Debtor has an ownership interest in the Trust. Even after being questioned regarding her ownership interest in the Trust on direct and cross

examination, it appears the female Debtor still does not fully grasp the nature of her ownership interest, which is understandable for a layperson.

22. With regard to the Lot valuation, the court is satisfied with the male Debtor's explanation regarding the value the Debtors attributed to the Lot on Schedule A based on his conversation with a reputable local real estate agent who was familiar with the property. Admittedly, the Debtors did not obtain an appraisal of the Lot, but most consumer debtors do not obtain appraisals in order to assign a value to their real property. It appears the Debtors may have undervalued the Lot, but there is a logical explanation for the value they assigned to the Lot at the time they completed their schedules.

23. Finally, the court notes that the facts of this case are distinguishable from the facts of those post-Marrama cases summarized by Judge Whitley in Jennings where courts denied conversion from Chapter 7 to Chapter 13 due to bad faith conduct by debtors. 2013 WL 1137052, at *5. In those cases, the debtors failed to disclose prepetition fraudulent transfers, misrepresented their financial situation on their schedules, lied at § 341 meetings, failed to cooperate with the Trustee, and failed to disclose multiple different assets. See In re Piccoli, 2007 WL 2822001, at *1-2 (E.D. Pa. Sept. 27, 2007); In re

10

Southern, 2011 WL 1226058, at *2 (Bankr. M.D.N.C. Mar. 29, 2011); Goines, 397 B.R. at 29; see also Jennings, 2013 WL 1137052, at *5 (concluding that debtors' failure to disclose a substantial gift, ownership of a business and other property, two IRA withdrawals, and income required denial of conversion).  That simply is not the situation here.

24.  As previously noted, the Debtors' conduct must be atypical and extraordinary to warrant denying them a conversion to Chapter 13, and the court can not find that the Debtors' conduct rises to that level.  In this case, there is a reasonable explanation for the Debtors' failure to disclose the female Debtor's interest in the Trust and undervaluation of the Lot.  Finally, in Marrama the Supreme Court emphasized the general policy that debtors should be given the opportunity to repay their debts, and that is exactly what these Debtors have proposed to do with a Chapter 13 plan that would repay 100% of allowed general unsecured claims.

25.  Thus, based on the foregoing the court **OVERRULES** the Trustee's Objection to Conversion and **DENIES** the Trustee's Motion to Reconvert.  Because the Chapter 13 Trustee expressed some concern regarding the feasibility of the Debtors' proposed plan, the court imposes a six-month future default on the Debtors' Chapter 13 plan payments.  The court further orders that this

11

case may not be dismissed but shall be reconverted to a Chapter 7 if the Debtors become unable to continue in Chapter 13.  In addition, the Debtors are ordered not to take any action that would reduce the value of the non-exempt assets, including the female Debtor renouncing under the Trust.  Finally, the court will allow the Chapter 7 Trustee an administrative claim in the case upon proper application and notice.

    **SO ORDERED.**

| | |
|---|---|
| **This Order has been signed electronically. The Judge's signature and court's seal appear at the top of the Order.** | **United States Bankruptcy Court** |